# SUMMONS ISSUED

Gerald Gross
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, NY 10281-1022
(212) 336-1023 (Brown)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

       v.

CORT POYNER and MOHAMMAD DOLAH,

                Defendants.

-------------------------------------------------------------- x

13 Civ. _____

**COMPLAINT**

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants Cort Poyner ("Poyner") and Mohammad Dolah ("Dolah") (collectively, the "Defendants"), alleges as follows:

    1.    The Defendants, both stock promoters, engaged in a fraudulent scheme to manipulate the market for the common stock of Resource Group International, Inc. ("Resource Group") and Gold Rock Resources Inc. ("Gold Rock"), both publicly traded companies, by paying bribes to cause purchases of Resource Group and Gold Rock common stock.

    2.    More specifically, in approximately November 2008, the Defendants entered into an agreement with an individual ("Individual A"), whom they believed represented a group of registered representatives ("RRs") who would solicit customer purchases of stock in exchange for undisclosed kickbacks. The Defendants promised to pay between 25% - 35% in kickbacks to

Individual A and the RRs he represented in exchange for the RRs buying up to $2 million in

Resource Group stock and $1 million in Gold Rock stock through their customers' accounts.

3.      Between December 11, 2008 and May 11, 2009, in accordance with the illicit

arrangement, the Defendants instructed Individual A to purchase Resource Group and Gold Rock

stock. The Defendants and Individual A coordinated their trading to ensure that Individual A's

purchase orders were matched with the Defendants' sell orders.

4.      Between December 11, 2008 and May 11, 2009, at the Defendants' direction,

Individual A caused the purchase of 800,000 shares of Resource Group stock for a total of

$50,000, and 20,000 shares of Gold Rock stock for a total of $20,400. Thereafter, the

Defendants paid Individual A cash bribes totaling $14,000 for those purchases.

## VIOLATIONS

5.      By virtue of their conduct, the Defendants violated Section 17(a) of the Securities

Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act

of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R.

§ 240.10b-5.

## JURISDICTION AND VENUE

6.      The Commission brings this action pursuant to the authority conferred upon it by

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act,

15 U.S.C. §§ 78u(d), seeking permanently to enjoin the Defendants from engaging in the acts,

practices and courses of business alleged in this Complaint. The Commission also seeks a final

judgment ordering the Defendants to disgorge their ill-gotten gains, if any, with prejudgment

interest thereon. The Commission seeks a judgment ordering the Defendants to pay civil money

penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section

21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). The Commission seeks an order

prohibiting Dolah from participating in an offering of penny stock pursuant to Section 20(g) of

the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. §

78u(d)(6). The Commission also seeks any other further equitable relief as the Court may deem

just and proper pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78(u)(d)(5).

7.      This Court has jurisdiction of this action pursuant to Sections 20(d) and 22(a) of

the Securities Act, 15 U.S.C. §§ 77t(d) and 77v(a), and Sections 21(d) and 27 of the Exchange

Act, 15 U.S.C. §§ 78u(d) and 78aa.

8.      Venue in this District is proper pursuant to Section 22(a) of the Securities Act, 15

U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the

transactions, acts, practices, and courses of business constituting the violations alleged herein

occurred within this District. For example, the purchases of Resource Group stock for which the

Defendants paid kickbacks were made in Queens, New York.

9.      The Defendants, directly or indirectly, have made use of the means or instruments

of transportation or communication in interstate commerce, or of a means or instrumentality of

interstate commerce, or of the mails, or of the facilities of a national securities exchange, in

connection with the transactions, acts, practices and courses of business alleged in this

Complaint.

## THE DEFENDANTS

10.     **Cort Poyner**, age 44, is a stock promoter. He lives in Boca Raton, Florida.

Poyner is a recidivist securities law violator. In April 2008, a jury in SEC v. The Children's

Internet, Inc. et al., 06-CV-6003 (N.D. Cal.) entered a verdict finding Poyner liable for violations

of Sections 10(b) and 15(a) of the Exchange Act, Exchange Act Rule 10b-5 and Sections 5(a),

5(c), and 17(a) of the Securities Act in connection with the offer and sale of a penny stock issued

by The Children's Internet, Inc. On November 3, 2008, a final judgment was entered against

Poyner in that action that, inter alia, prohibited Poyner from "participating in an offering of

penny stock, including by engaging in activities with a broker, dealer, or issuer for purposes of

issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock."

11.    **Mohammad Dolah**, age 42, is a stock promoter. He lives in Brooklyn, New

York.

### RELEVANT ENTITIES

12.    **Resource Group** is a Wyoming corporation with its principal office located in

Scottsdale, Arizona. Resource Group's stock began trading publicly on March 31, 2004 and was

quoted on the Pink Sheets. As of March 31, 2010, the company purportedly had 9,279,980,005

shares outstanding. Resource Group's securities are not registered with the Commission.

13.    **Gold Rock** is a Nevada corporation with its principal office located in Beijing,

China. On March 27, 2009, Gold Rock changed its name to RainEarth Inc. Gold Rock's stock

began trading publicly on April 24, 2008 and is quoted on the OTC Bulletin Board. As of April

3, 2009, the company purportedly had 52,000,000 shares outstanding. The company's securities

are registered with the Commission pursuant to Section 12(g) of the Exchange Act.

### FACTS

A.    **Background**

14.    Resource Group, a development stage company, purports to be an energy and food

4

company.

15.     According to Resource Group's annual report for the period ended December 31, 2009, filed on February 9, 2010 with Pink Sheets, LLC, Resource Group had a net loss of $19,458 for its fiscal year ended December 31, 2009.

16.     Resource Group common stock qualifies as a penny stock as it does not meet any of the exceptions from the definition of penny stock contained in Rule 3a51-1 of the Exchange Act, 17 C.F.R. § 240.3a51-1.

17.     Gold Rock, a development stage company, purports to be engaged in the exploration for gold and mineral deposits in Canada.

18.     According to Gold Rock's 10-K/A annual report for the period ended April 30, 2010, filed with the Commission on September 14, 2010, Gold Rock had a net loss of $704,269 for its fiscal year ended April 30, 2010.

19.     Gold Rock common stock qualifies as a penny stock as it does not meet any of the exceptions from the definition of penny stock contained in Rule 3a51-1 of the Exchange Act, 17 C.F.R. § 240.3a51-1.

**B.     The Defendants Entered into an Illicit Arrangement.**

20.     Between November 2008 and May 2009, Individual A represented himself to the Defendants as a person who could arrange stock purchases by a group of RRs (on behalf of their respective customers) in exchange for undisclosed kickbacks.

21.     To create trading volume in Resource Group and Gold Rock common stock, the Defendants entered into an illicit kickback scheme with Individual A.

22.     Between November 15, 2008 and December 4, 2008, Poyner offered to pay

Individual A a 25% kickback in exchange for the purchase of $2 million of Resource Group common stock. On November 29, 2008, Poyner told Individual A: "[T]hat whole 25% straight off the top comes back to you … every million dollars, a quarter million dollars goes back to you."

23.     On December 11, 2008, in accordance with the illicit agreement, Poyner instructed Individual A to purchase 200,000 shares of Resource Group stock for an aggregate purchase price of $20,000. Poyner and Individual A coordinated their trading to ensure that Individual A's purchased orders were matched with the Defendants' sell orders.

24.     On December 20, 2008, Poyner met with Individual A and gave him $5,000 cash (a 25% kickback) as compensation for purchasing the Resource Group stock.

25.     In January 2009, the Defendants requested that Individual A purchase additional shares of Resource Group stock. On January 23, 2009, Dolah agreed to pay a 35% kickback to Individual A to purchase additional shares of Resource Group stock.

26.     On January 28, 2009, in accordance with the illicit agreement, Dolah instructed Individual A to purchase 600,000 shares of Resource Group stock for an aggregate purchase price of $30,000. Dolah and Individual A coordinated their trading to ensure that Individual A's purchase orders were matched with the Defendants' sell orders. After the trade, Dolah informed Individual A that "it's been done … we captured everything."

27.     On February 2, 2009, Dolah met with Individual A and gave him $9,000 cash (a 30% kickback) as compensation for purchasing the Resource Group stock.

28.     In March 2009, Dolah discussed with Individual A another stock manipulation scheme. On March 27, 2009, Dolah said he had "a new one, it's brand new, brand spanking new,

6

like a new born baby" and that the company was Gold Rock. Dolah also told Individual A that "everything has to be lined up ready to go."

29.     On March 30, 2009, Dolah agreed to pay a kickback to Individual A to purchase Gold Rock stock, saying "everyone gets taken care of."

30.     On April 9, 2009, Dolah asked Individual A to purchase $1 million worth of Gold Rock common stock.

31.     On May 11, 2009, in accordance with the illicit agreement, Dolah instructed Individual A to purchase 20,000 shares of Gold Rock stock for an aggregate purchase price of $20,400. Dolah and Individual A coordinated their trading to ensure that Individual A's purchase orders were matched with the Defendants' sell orders.

### FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act

32.     The Commission realleges and incorporates paragraphs 1 through 31 by reference as if fully set forth herein.

33.     The Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, have: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business which operated, or would operate as a fraud or deceit upon the purchasers of securities.

34.    The Defendants knowingly or recklessly paid undisclosed kickbacks in order to create the false appearance of trading volume in the securities of Resource Group and to manipulate the market for such securities. In furtherance of their scheme to create the false appearance of trading volume and manipulate the market for Resource Group securities, Defendants coordinated their trading with Individual A so that his purchase orders matched their sell orders.

35.    In order to create the false appearance of trading volume in the securities of Gold Rock common stock and to manipulate the market for such securities, the Defendants engaged in matched trading in Gold Rock common stock with Individual A. Defendants' conduct was intentional or at least reckless.

36.    By reason of the foregoing, the Defendants, singly or in concert, directly or indirectly, have violated, are violating, and unless enjoined will again violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

### SECOND CLAIM FOR RELIEF

#### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

37.    Paragraphs 1 through 31 are hereby realleged and incorporated by reference.

38.    The Defendants, directly and indirectly, singly or in concert, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, have: (a) employed devices, schemes, or artifices to defraud; (b) made, untrue statements of material fact or omissions of material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or

8

courses of business which operated or would operate as a fraud or deceit upon any person.

39.     The Defendants knowingly or recklessly paid undisclosed kickbacks in order to create the false appearance of trading volume in the securities of Resource Group and to manipulate the market for such securities.  In furtherance of their scheme to create the false appearance of trading volume and manipulate the market for Resource Group securities, Defendants coordinated their trading with Individual A so that his purchase orders matched their sell orders.

40.     In order to create the false appearance of trading volume in the securities of Gold Rock common stock and to manipulate the market for such securities, the Defendants engaged in matched trading in Gold Rock common stock with Individual A.  Defendants' conduct was intentional or at least reckless.

41.     By reason of the foregoing, Defendants, singly or in concert, directly or indirectly, have violated, are violating, and unless enjoined will again violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5.

## **RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests that this Court enter a final judgment:

### **I.**

Permanently enjoining the Defendants from violating Section 17(a) of the Securities Act, 15 U.S.C. §77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §§ 240.10b-5.

## II.

Ordering Defendants to disgorge their ill-gotten gains, if any, plus prejudgment interest.

## III.

Imposing civil money penalties upon each Defendant pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## IV.

Prohibiting Dolah from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act,15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6).

## V.

Permanently restraining and enjoining Poyner from, directly or indirectly, buying or selling, or acquiring or disposing in any other manner, legal, beneficial, pecuniary, or other interest in any penny stock, or advertising, marketing, or otherwise promoting any penny stock pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5).

## VI.

Granting such other and further relief as the Court may deem just and proper.

Dated:        July 31, 2013
              New York, New York

Gerald Gross
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281-1022
(212) 336-1023 (Brown)
brownn@sec.gov

Of Counsel:

        Andrew M. Calamari
        Nancy A. Brown
        Sheldon Mui